ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A Professional Law Corporation
L. Brent Garrett          State Bar No. 225192
   BGarrett@aalrr.com
April L. Szabo            State Bar No. 261576
   April.Szabo@aalrr.com
12800 Center Court Drive South, Suite 300
Cerritos, California 90703-9364
Telephone: (562) 653-3200
Fax: (562) 653-3333

Attorneys for Plaintiff
LEVECKE CORPORATION

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| LEVECKE CORPORATION,<br><br>     Plaintiff,<br><br>vs.<br><br>TEAMSTERS LOCAL 630,<br><br>     Defendant. | **Case No:** 5:19-CV-1078<br><br>**COMPLAINT AND PETITION TO VACATE ARBITRATOR'S DECISION** |

Plaintiff LeVecke Corporation (hereinafter "LeVecke"), for its Complaint and Petition to Vacate an Arbitration Award against Teamsters Local 630 (hereinafter "Defendant" or "Union") allege as follows:

**JURISDICTION AND VENUE**

1. This action arises under Section 301 of the Labor Management Relations Act ("LMRA), 29 U.S.C. § 185. Plaintiff petitions to vacate the Decision and Award of Arbitrator Fragnoli (hereinafter "Arbitration Award") issued pursuant to a labor agreement.

2. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 in that the cause of action arises under Section 301 of the LMRA, 29 U.S.C. § 185.

3. Venue is proper in this Court under 28 U.S.C. § 1391 and 29 U.S.C. § 185.

## PARTIES

4. LeVecke Corporation is a company that engages in bottling operations in Mira Loma, California. Work performed by LeVecke affects commerce within the meaning of the National Labor Relations Act, 29 U.S.C. §§ 142(1) and 152(2). LeVecke does business in this judicial district.

5. The Food, Industrial and Beverage Warehouse, and Clerical Employees Union Local No. 630 (herein "Local 630" or the "Union") is a labor organization. The Union is headquartered in Los Angeles, California. The Union represents, for purposes of collective bargaining, certain persons employed in the bottling industry. That industry affects commerce within the meaning of the National Labor Relations Act, 29 U.S.C. §§ 142(1) and 152(5). The Union does business in this judicial district.

## FACTS

6. LeVecke Corporation ("LeVecke") processes and bottles liquor products at a bottling facility in Mira Loma, California.

7. LeVecke is party to a collective bargaining agreement (herein "CBA") with Local No. 630 dated January 1, 2017. A true and correct copy of the CBA is attached hereto as **Exhibit A**.

8. The CBA provides that "the operation of the plant and the direction of the personnel employed therein including the right of lay off, transfer, promote, and demote employees shall be vested exclusively in the Employer provided, however, that such rights shall in no event be so exercised as to infringe on the rights of the Union or any employee under this Agreement…."

9. The CBA further provides LeVecke "shall have the right to discharge any employee for good cause, such as but not limited thereto, dishonesty, incompetency, [and] failure to perform work normally required…."

10. Maria Espinoza ("Espinoza") was employed by LeVecke as an Inspector commencing on September 27, 2012 and was a member of the Union.

11. As an Inspector, Espinoza was responsible for quality control, including inspecting labels, caps, corks, capsules, stamps, and bar codes. Inspectors are also responsible for hand-packing bottles into shipping boxes. LeVecke conducts routine training in English and Spanish on the responsibilities of the Inspector, including training on the duty to hand-back bottles. Espinoza completed this training twice.

12. On May 12, 2017, Espinoza was given a Final Written Warning for engaging in a work stoppage in violation of the CBA. Espinoza was placed on a one-week suspension and was issued a "final written warning for purposes of progressive discipline." The Final Written Warning stated "[a]ny further discipline within a one-year period shall be grounds for immediate discharge." The Union agreed with LeVecke Espinoza's Final Written Warning was valid.

13. Amador Whiskey is a premium liquor product owned by Trinchero Family Estates and bottled at LeVecke's Mira Loma plant. To ensure quality, Trinchero assigns an on-site quality control inspector to observe LeVecke's production runs of Amador. Amador bottle labels are "estate stock," used for high-end products. Amador bottles arrive at LeVecke's facility pre-labeled by a third-party vendor. If the labels are damaged during LeVecke's production run, then LeVecke is obligated to correct the labels at its own cost. Due to the financial implications of damaged labels, it is important that LeVecke's employees handle the bottles carefully.

14. The Amador line includes three Inspector stations. The first station is known as the "dumper." The dumper is responsible for placing the empty bottles onto the conveyor belt.

15. The second station is the "inspector packer." The inspector packer lowers bottles from the upper conveyor belt, which runs at shoulder height, and

hand packs the bottles into a shipping box that runs on a lower conveyor belt. While inspecting, the inspector packer must visually inspect the bottles, ensuring there is no damage to the labels. It is not acceptable for a packer to drop a bottle into a shipping box, since dropping the bottles can chip the labels, which results in unusable product, and can crack the bottle itself, which can result in a leak that can seep into surrounding cases. A single leaking bottle can force LeVecke to re-pack an entire pallet of product.

16. The third station is responsible for applying a two-fold strip stamp to the bottles. The strip stamp covers the top of the bottle, displays the Amador logo and serves as an anti-tampering device.

17. Richard Sarenana ("Sarenana"), the Planning and Process Manager for LeVecke, was working as Espinoza's supervisor on June 13, 2017. Felix Camacho ("Camacho"), a production foreman and a member of the Union, was the shift foreman on that date. As a foreman, Camacho gives work directions and can initiate the disciplinary process. Espinoza considered Camacho a supervisor.

18. At the start of her shift on June 13, 2017, Espinoza was assigned to work at the packing inspection table, which required inspecting individual bottles and hand-packing them in the shipping box. Espinoza completed this portion of her shift without incident.

19. Before lunch, Espinoza told Camacho she wanted to rotate to the stamp station. Camacho denied the request, due to staffing concerns, but Espinoza complained the decision was unfair. Camacho accordingly decided to permit Espinoza to work the stamp station after lunch. However, Espinoza worked the stamp station for approximately 20 minutes before the inspection table down the line became overcrowded with bottles with incorrectly-applied strip stamps.

20. Espinoza again asked to be reassigned, because she could not complete the strip stamping process correctly. Sarenana decided to return Espinoza to the inspection packing table.

- 4 -
COMPLAINT AND PETITION TO VACATE ARBITRATOR'S DECISION

21. Despite her failure to perform the task correctly, Espinoza became angry that she was moved away from the strip stamping table, and was observed by Camacho dropping bottles into shipping boxes from an inappropriate height. Camacho instructed Espinoza to be more careful while packing bottles. Espinoza stated she understood.

22. However, Felipe Solario ("Solario"), the quality control representative for Trinchero, notified Sarenana a few minutes later that Espinoza was again dropping bottles. Sarenana observed Espinoza, and again noted she was dropping bottles. Sarenana approached Espinoza and instructed her to pack the bottles correctly. However, Camacho observed Espinoza continuing to drop bottles into boxes. Sarenana thus instructed Camacho to move Espinoza to the dumping station.

23. The next morning, Martin Rezac ("Rezac"), the Production and Maintenance Manager for LeVecke, asked Sarenana and Camacho to prepare a short narrative of the events on the shift. Rezac interviewed Espinoza, who admitted she was "angry" she was not permitted to work at the station she desired to work at. Espinoza completed a written statement admitting Camacho "took [her] off of line B running Amador because I was letting the bottle[s] fall."

24. Rezac concluded Espinoza had acted intentionally in dropping the bottles. Rezac further concluded that if Espinoza was unhappy with her work assignments, she should have filed a grievance instead of "acting out" by dropping bottles of LeVecke's product.

25. Rezac prepared a termination notice for Espinoza, citing work quality and insubordination as the reason for her termination. Rezac concluded termination was appropriate because Espinoza was already on a Final Written Warning and because the CBA states that "failure to perform work normally required" is an express ground for discipline. Rezac concluded Espinoza failed to perform work required of her position because she was unable to properly apply strip stamps. Rezac also concluded Espinoza was insubordinate because she continued dropping

bottles after she had been told not to do so. Rezac was the final decision-maker with respect to Espinoza's discharge. Rezac stated that if Espinoza was not on a Final Written Warning, she would not have been terminated for the misconduct; instead, she would have been given a write-up or suspension.

26. After her termination, Espinoza filed a grievance with Local 630. LeVecke and Local 630 agreed to submit the dispute to arbitration with Arbitrator Kathy Fragnoli, J.D. The Arbitrator conducted a two-day hearing, which included testimony by Espinoza, Camacho, and Sarenana.

27. The Arbitrator issued an Arbitration Award on March 4, 2019, concluding LeVecke did not have just cause to terminate Espinoza's employment. A true and correct copy of the Arbitrator's Award is attached hereto as **Exhibit B**. The Arbitrator concluded LeVecke did not prove the required elements of insubordination and had not shown just cause to discipline Espinoza for insubordination or poor performance. The Arbitrator concluded LeVecke accordingly could not show that Espinoza's Final Warning was triggered or that there was just cause to terminate Espinoza.

28. In reaching this decision, the Arbitrator made the following decisions:
   a. Camacho was not a supervisor, and thus Espinoza could not be terminated for failing to comply with an instruction from Camacho;
   b. The evidence did not demonstrate a clear order to Espinoza that she should not drop bottles into packing boxes;
   c. The evidence did not demonstrate Espinoza understood she was being given an order to stop dropping bottles into boxes;
   d. The evidence did not demonstrate it was made clear to Espinoza that a failure to comply with the instruction to stop dropping bottles could result in discipline.

/ / /

/ / /

# CLAIMS

## THE ARBITRATION AWARD MUST BE VACATED BECAUSE DUE TO ITS MANIFEST DISREGARD OF THE LAW AND THE FACTS, IT IS CONTRARY TO PUBLIC POLICY.

29. Plaintiff incorporates the allegations contained in paragraphs 1 – 28 herein.

30. An Arbitration Award that constitutes a manifest disregard of the law should be vacated. *Am. Postal Workers Union AFL – CIO v. U.S. Postal Serv.*, 682 F.2d 1280, 1284 (9th Cir. 1982) cert. den'd 103 S. Ct. 1183 (1983); *Comedy Club, Inc. v. Improv. W. Assoc.*, 553 F.3d 1277, 1290 (9th Cir. 2009) cert. den'd 130 S. Ct. 145.

31. In addition, an Arbitration Award in violation of a clear public policy should be vacated. *California Pac. Med. Ctr. v. Serv. Employees Int'l. Union*, 2007 WL 81906 (N.D. Cal. 2007) *aff'd.* 300 F. App'x. 471 (9th Cir. 2008); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 986 (9th Cir. 2001) *amended on other ground and rehearing denied* 275 F.3d 1187.

32. "Gross negligence is an intentional wrongdoing that justifies severe penalties, including discharge. It is the want of even slight care, as distinguished from ordinary care. It is almost a willful disregard of what is being done and an almost complete inattentiveness to the job." *The Martin-Brower Company*, 1995 BNA LA Supp. 115819 (Calhoun, 1994).

33. "Insubordination is the refusal by an employee to work or obey an order given by the employee's superior. In most instances, any employee who refuses to work or obey now (and grieve later) is considered 'insubordinate.'" *Discipline and Discharge in Arbitration*, 3rd Edition, at 5-3.

34. "It is [] appropriate to consider an employee's record as to disciplinary penalties in any discharge, subject to any limitations on such consideration found in

the Agreement. It is not appropriate, however, to reopen settled grievances with regard to prior disciplinary penalties, nor to put on trial the merits of prior discipline on which no grievance was filed. The grievant's disciplinary record has already been written." *McDonnell Douglas Corp.*, 51 BNA LA 1076 (Bothwell, 1968).

35. "Typically, the last stage of progressive discipline prior to discharge involves the issuance of some type of 'final' warning. Once progressive discipline has properly passed through the final warning stage — and it can reasonably be determined that a turnabout will not be forthcoming — discharge is widely felt to be supported by just cause, absent the presence of mitigating factors." *King's Daughters' Hospital*, 1992 BNA LA Supp. 115232 (Heekin, 1992).

36. The Arbitrator's Award refused to consider Espinoza's Final Written Warning and applicable decisional authority regarding the seriousness of the conduct leading to her termination.

37. Accordingly, the Arbitrator's Award is contrary to public policy by virtue of its disregard of the law and the facts pertaining to Espinoza's Final Written Warning and insubordination.

**THE ARBITRATION AWARD FAILS TO DRAW ITS ESSENCE FROM THE CBA AND THE ARBITRATOR HAS INSTITUTED HER OWN BRAND OF INDUSTRIAL JUSTICE.**

38. Plaintiff incorporates allegations contained in paragraphs 1 – 37 herein.

39. The Arbitration Award appears to punish LeVecke for a perceived act of retaliation against an employee who had been disciplined for engaging in a work stoppage. The Award mischaracterizes foundational facts and testimony regarding the sequence of events during the shift in question, as well as Espinoza's status with LeVecke at the time. The Arbitrator ignored the language of the CBA and her mandate to interpret it. Indeed, the Arbitration Award is foundationally based upon the unsupported premise that LeVecke was required to take additional steps before

terminating Espinoza's employment, despite her undisputed performance counseling status. The Union does not contest the validity of Espinoza's Final Written Warning, which expressly stated "any further discipline within a one-year period shall be grounds for immediate discharge."

40. An Arbitration Award "without foundation in reason or fact" is equated to an award that exceeds the Arbitrator's jurisdiction and authority. *Schneider v. Southern Ry. Co.*, 822 F.2d 22, 24 (6th Cir. 1987) (quoting *Brotherhood of Railroad Trainmen v. Central of Georgia Railway Co.*, 415 F.2d 403 (5th Cir. 1969) *cert. den'd.* 396 U.S. 1008 (1970)).

41. Moreover, the Arbitration Award ignores the CBA's express recognition that "the operation of the plant and the direction of the personnel employed therein including the right of lay off, transfer, promote, and demote employees **shall be vested exclusively in the Employer** …." (Exh. A, Art. III(A), emphasis added.)

42. The Arbitration Award further ignores the CBA's statement that LeVecke "shall have the right to discharge any employee for good cause, such as but not limited thereto, dishonesty, incompetency, [and] failure to perform work normally required…." (Exh. A, Art. III(B), emphasis added.).

43. An Arbitration Award that fails to draw its "essence from the contract" should be vacated. *Sprewell*, 266 F.3d at 986-87. An Arbitrator is also not permitted to install her own brand of industrial justice contrary to the contract.

///

///

///

## **PRAYER FOR RELIEF**

WHEREFORE, in accordance with Section 301 of the LRMA, 29 U.S.C. § 185, Plaintiff prays for judgment against Defendant as follows:

1. For an order and judgment vacating Arbitrator Fragnoli's March 4, 2019 Arbitration Award.
2. For all other and further relief as the Court deems just and equitable.

Dated: June 12, 2019                ATKINSON, ANDELSON, LOYA, RUUD & ROMO

By: */s/ April L. Szabo*
    L. Brent Garrett
    April L. Szabo
    Attorneys for Plaintiff
    LEVECKE CORPORATION

008196.00015
24072429.2

- 10 -
COMPLAINT AND PETITION TO VACATE ARBITRATOR'S DECISION